# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| BRANDON ROSANO PERALTA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:26-cv-02331-TLP-tmp |
| v. | ) | |
| | ) | |
| CHRISTOPHER BULLOCK, Field Office | ) | |
| Director at the U.S. Immigrations and | ) | |
| Customs Enforcement New Orleans Field | ) | |
| Office, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Brandon Rosano Peralta, a noncitizen detained in the West Tennessee Detention Facility in Mason, Tennessee, petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) The Court ordered Respondent to show cause why the Writ should not be granted. (ECF Nos. 6.) Respondent responded.[1] (ECF No. 8.) Petitioner replied. (ECF No. 10.) And for the reasons below, the Court **GRANTS** the Petition.

### BACKGROUND

Petitioner, a Mexican citizen, entered the United States in November 2024 with his wife and two young sons. (ECF No. 10 at PageID 2.) He has been living in the United States and has no criminal history. (ECF No. 10 at PageID 42–43.) The Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") on November 7, 2024. (ECF No. 8 at

---

[1] In his response, Respondent stated that "further briefing and/or oral argument would not be an efficient or necessary use of judicial or party resources." (ECF No. 8 at PageID 29.) The Court agrees.

PageID 26.)  The NTA charged Petitioner with being an alien "present in the United States who has not been admitted or paroled, or who has arrived in the United States at any time other than as designated by the Attorney General" under the Immigration and Nationality Act ("INA") §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i).  (ECF No. 8-1 at PageID 34.)  Petitioner has remained out of custody in the United States until now.  DHS rearrested Petitioner on March 6, 2026, for driving without a license.  (ECF No. 8 at PageID 26.)

And DHS and the Executive Office of Immigration Review ("EOIR") have not held a bond hearing for Petitioner.  (*See* ECF No. 1 at PageID 6.)  Instead, DHS and EOIR determined that he is subject to mandatory detention (*see* ECF No. 8 at PageID 26–27.), a change from the decades-long practice of affording noncitizens in Petitioner's position with bond hearings before their removal proceedings.  (*See* ECF No. 1.)  The government changed its practice in July 2025, when DHS, the Department of Justice ("DOJ"), and ICE issued a new policy.[2]  *See, e.g.*, *Monge-Nunez v. Ladwig*, No. 25-3043, 2025 WL 3565348, at *1 (W.D. Tenn. Dec. 12, 2025).  According to the new policy, noncitizens who have resided in the United States for over two years and who are apprehended in the interior of the country are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Id.*  But before July 2025, DHS afforded those same persons bond hearings under 8 U.S.C. § 1226(a).  *Id.*; *Godinez-Lopez v. Ladwig*, No. 25-2962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  The Board of Immigration Appeals ("BIA") upheld this new policy in the case of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

---

[2] American Immigration Lawyers Association, *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.") (last visited Apr. 9, 2026).

And for Petitioner, this means that he now faces continued detention without the possibility of bond.  Petitioner alleges that his continued detention under § 1225(b) violates the INA, his Fourth Amendment right to be free of unreasonable seizures, his Eighth Amendment right against cruel and unusual punishment, and his Fifth Amendment right to due process.[3] (ECF No. 1 at PageID 6–7.)  He asks the Court to grant his Petition and release him.  (*Id.* at PageID 7.)

This is not an issue of first impression before the Court.  And Respondent detaining Petitioner under § 1225(b) instead of § 1226(a) is not an isolated event.  Indeed, the Court has recently considered this same legal question many times and consistently held that "§ 1226 governs the arrest and detention of a noncitizen without an apparent criminal history who has been residing in the United States for over a year."  *Padilla-Ugsha v. Ladwig*, No. 25-3045, 2025 WL 3638007, at *7 (W.D. Tenn. Dec. 15, 2025); *see Monge-Nunez*, 2025 WL 3565348, at *6; *Cordova v. Ladwig*, No. 25-3037, 2025 WL 3679764, at *7 (W.D. Tenn. Dec. 18, 2025); *Rios Pena v. Ladwig*, No. 25-3082, 2025 WL 3679766, at *7 (W.D. Tenn. Dec. 18, 2025); *Moreno-Espinoza v. Ladwig*, No. 25-3093, 2025 WL 3691452, at *9 (W.D. Tenn. Dec. 19, 2025); *Urrutia-Diaz v. Ladwig*, No. 25-3098, 2025 WL 3689158, at *7 (W.D. Tenn. Dec. 19, 2025) ("So even though Petitioner here has resided in the United States for less than a year, § 1226 governs because he is not *seeking admission* but is *already in this country*.").

Because of the increasing frequency of these habeas petitions, other district courts in this circuit have also been asked to consider which statutory provision governs.  They too have determined that § 1226(a) fits in this scenario.  *See, e.g.*, *Godinez-Lopez*, 2025 WL 3047889;

---

[3]Because the Court is providing Petitioner with his requested relief based on his INA and due process claims, it declines to address his Fourth Amendment and Eighth Amendment claims.

*Lopez-Campos*, 797 F. Supp. 3d at 784.  Other district courts across the country have concluded

the same.  As one court observed:

> By a recent count, the central issue in this case – the administration's new position
> that *all* noncitizens who came into the United States illegally, but since have been
> living in the United States, *must be detained* until their removal proceedings are
> completed – has been challenged in at least 362 cases in federal district courts.
> The challengers have prevailed, either on a preliminary or final basis, in 350 of
> those cases decided by over 160 different judges sitting in about fifty different
> courts spread across the United States.  Thus, the overwhelming, lopsided
> majority have held that the law still means what it always has meant.

*Barco Mercado v. Francis*, -- F. Supp. 3d --, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025)

(footnotes omitted) (collecting cases).[4]

### **LEGAL STANDARD**

A petition for habeas corpus enables a person to challenge the legality of their custody.

*See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475,

484 (1973)).  And its traditional function "is to secure release from illegal custody."  *Preiser*,

411 U.S. at 484; *see* 28 U.S.C. 2241(c)(3) ("The writ of habeas corpus shall not extend to a

prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the

United States[.]").  Petitioner here asserts that his custody under 8 U.S.C. § 1225(b)(2)(A) is

unlawful.

Sections 1225 and 1226 of the INA typically govern the detention of noncitizens during

removal proceedings.  *See* 8 U.S.C. §§ 1225, 1226.  Section 1225(b)(2)(A) governs the

mandatory detention of an "applicant for admission" after an immigration officer has determined

that the applicant is not entitled to admission in the United States.

(b)      Inspection of applicants for admission
            . . .

---

[4] The Fifth Circuit held the opposite in *Buenrostro-Mendez v. Bondi*, -- F.4th --, 2026 WL
323330 (5th Cir. 2026).

> (2)    Inspection of other aliens
>     (A)    In general
>         Subject to subparagraphs (B) and (C), in the case of an
>         alien who is an applicant for admission, if the examining
>         immigration officer determines that an alien seeking
>         admission is not clearly and beyond a doubt entitled to be
>         admitted, the alien shall be detained for a proceeding under
>         section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). The INA defines an "applicant for admission" as an alien "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). And "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Again, detention is mandatory under this section. *See* 8 U.S.C. § 1225(b)(2)(A).

Section 1226(a) provides for discretionary detention:

> (a)    Arrest, detention, and release
>     On a warrant issued by the Attorney General, an alien may be arrested and
>     detained pending a decision on whether the alien is to be removed from
>     the United States. Except as provided in subsection (c) and pending such
>     decision, the Attorney General—
>     (1)    may continue to detain the arrested alien; and
>     (2)    may release the alien on—
>         (A)    bond of at least $1,500 with security approved by, and
>             containing conditions prescribed by, the Attorney General .
>             . . .

8 U.S.C. § 1226(a). But § 1226(c), known as the Laken Riley Act, provides for the mandatory detention of aliens found inadmissible or deportable under specific provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes. 8 U.S.C. § 1226(c). Aliens arrested and detained under this section "have a right to request a custody redetermination (i.e., bond hearing) before an Immigration Judge." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). That immigration judge "evaluates whether there is a risk of nonappearance or danger to

the community." *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).  With those

provisions in mind, the Court now turns to the Petition.

## ANALYSIS

The issue here is whether § 1225(b)(2)(A) or § 1226(a) applies to Petitioner's detention.

These facts are not distinguishable from those in *Padilla-Ugsha*, *Cordova*, *Rios Pena*, *Morena-*

*Espinoza*, or *Urrutia-Diaz*.  The questions of law in this case, and the challenges to the

government's policy and practice, substantially overlap with those at issue in those previous

cases.  So in the interest of judicial economy, the Court addresses the main arguments at issue

here—administrative exhaustion, statutory interpretation, and procedural due process—in a more

succinct manner than before.

## I.    Administrative Exhaustion

Petitioner has not exhausted his administrative remedies.  (*See* ECF No. 1 at PageID 2.)

To do so, he would need to appeal his denial of a bond hearing to the Board of Immigration

Appeals ("BIA").  Respondent argues that the Court should require Petitioner to go through that

process before considering his Petition.  (ECF No. 8 at PageID 27.)

When Congress mandates it, courts require petitioners to exhaust their administrative

remedies.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  But when, as here, Congress

has not imposed a statutory exhaustion requirement, the decision whether to require a petitioner

to exhaust lies within "sound judicial discretion."  *Id*.  In exercising that discretion, the Supreme

Court has explained that "federal courts must balance the interest of the individual in retaining

prompt access to a federal judicial forum against countervailing institutional interests favoring

exhaustion."  *Id.* at 146.  Those institutional interests are "protecting administrative agency

authority and promoting judicial efficiency."  *Id.* at 145.

The Supreme Court also identified situations in which the interest of the individual weighs heavily against the institutional interests. *See id.* at 146–49. Relevant here, "an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it." *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *see also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23 (6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

The BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (2025) makes requesting a bond hearing from an immigration court futile. That is because the BIA's decision—which is binding on immigration judges—upholds the very policy Petitioner is challenging here. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 228 (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'"); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025) (reasoning that "administrative review is not likely to change Respondents' position that § 1225(b)(2)(A) applies in this context"). What is more, the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). This means that Petitioner can only bring his constitutional claims in federal court.

It follows that requiring exhaustion in this case would not further the ends of judicial

efficiency and protecting administrative authority because it would only delay the resolution of

Petitioner's legal questions. His individual interest in having prompt access to this forum

outweighs any institutional interests at stake. Requiring Petitioner to wait for the BIA to address

an issue it has already decided creates hardship for hardship's sake. The Court declines to

impose such a result here.

## II.    Statutory Interpretation

The Parties disagree about whether § 1225(b)(2)(A) or § 1226(a) controls Petitioner's

detention here. In short, Petitioner argues that § 1225 governs the detention of recent noncitizens

at or near the border and that § 1226 governs the pre-removal detention of noncitizens already

present in the United States. (ECF No. 10 at PageID 45–47.) Respondent counters that § 1225

applies to Petitioner because "he is an alien who entered the United States without inspection or

parole. Therefore, he was, and remains, an 'applicant for admission' who is treated, for

constitutional purposes, as if stopped at the border." (ECF No. 8 at PageID 27–28.)

Familiar principles of statutory interpretation control the analysis. Courts construe

statutory text "so that effect is given to all its provisions, so that no part will be inoperative or

superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting

*Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see* Antonin Scalia and Bryan A. Garner, Reading

Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision

is to be given effect."). To apply this approach, courts give each word within the statute "'its

ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has

meaning only in context.'" *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation

modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010, (2017)).

This includes the presumption "that [the] legislature says in a statute what it means and means in a statute what it says." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). For the reasons below, these principles resolve the dispute in Petitioner's favor.

Detention under § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A). This means that the alien must be an "applicant for admission" who is "seeking admission" and one who is "not clearly and beyond a doubt entitled to be admitted."

Section 1225(a)'s "seeking admission" language does not apply to Petitioner under these facts. "Seeking," of course, implies "some sort of present-tense action." *Barco Mercado*, -- F. Supp. 3d. --, 2025 WL 3295903, at *5. With that in mind, to fall under § 1225(b)(2)(A), the alien must be *actively* seeking admission, not simply residing in the country after entering it unlawfully. Because Petitioner's unlawful entry occurred over a year ago, the Court is not persuaded that he was actively seeking admission when ICE detained him in March 2026.[5]

The plain meaning of § 1226 better captures Petitioner's situation. For example, it applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Again, ICE detained Petitioner in the interior of the country where he had already resided. So the Attorney General has the discretion under this section to "continue to detain [him]" or he "may release [him] on

---

[5] The INA recognizes two classes of aliens who are not seeking admission, but that does not preclude the existence of other alien classes that do not fall under § 1225. *See, e.g.*, *Padilla-Ugsha*, 2025 WL 3638007.

bond." (*Id.*)  He may not, though, deny him the bond hearing to which he is entitled.  *See* 8

C.F.R. § 1236.1(c)(8), (d)(1).

The titles of the statutory provisions also support this distinction.  *See Godinez-Lopez*,

2025 WL 3047889, at *4.  "[T]he title of a statute in the heading of a section [is a] tool[]

available for the resolution of a doubt" about a statute's meaning.  *Dubin v. United States*, 599

U.S. 110, 121 (2023).  Section 1225's title is "Inspection by immigration officers; expedited

removal of inadmissible *arriving* aliens; referral for hearing."  8 U.S.C. §1225 (emphasis added).

Section 1225's title then envisions *arriving* aliens placed in expedited removal.  But again,

Petitioner was detained far from the border.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287

(2018).  Meanwhile, § 1226's title is "Apprehension and detention of aliens."  8 U.S.C. § 1226.

That title fits here.  Petitioner was apprehended, not while arriving in the United States, but over

a year later.  And he is *now* detained.  Section 1225's therefore seems inapplicable to aliens in

Petitioner's shoes, but § 1226's title seems spot on.

That is not all.  Respondent's interpretation of § 1225(b) makes § 1226(c)'s mandatory

detention provision superfluous.  To be sure, subsections 1226(c)(1)(E)(i)–(ii) provide for

mandatory detention of certain aliens.  But it applies only to those aliens who both entered the

country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and who are also

"charged with, . . . arrested for, . . . convicted of . . ." certain crimes.  8 U.S.C. §

1226(c)(1)(E)(i)–(ii).  And so to interpret § 1225(b)(2)(A) as Respondent argues would subject

mandatory detention to every alien who did not lawfully enter the country.  This reading would

strip 1226(c) of meaning.  What is more, Congress only recently added subsection 1226(c)(1)(E)

when it passed the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  The Court declines

to presume that Congress pointlessly amended the statute with a redundant provision when it

10

most recently considered it. *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2019) ("This would violate the cannon against interpreting any statutory provision in a manner that would render another provision superfluous.").

At bottom, §§ 1225 and 1226 are different statutory provisions that apply to different contexts. And the Supreme Court has already distinguished the two. In *Jennings*, the Court determined that the government may "detain certain aliens seeking admission into the country" and that the § 1225 process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287, 289. Whereas § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." 583 U.S. 281, 289 (2018) (emphasis added). Respondent has articulated no compelling reason to stray from this commonsense understanding.

So the Court finds § 1226 governs the detention of an alien like Petitioner, who has no known criminal history and who has been residing in the interior of the United States. Petitioner is therefore subject to the discretionary bond process under § 1226.

## III.    Due Process

Because the Court has found that § 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute. *See, e.g. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in [Petitioner's] position has only the rights . . . that Congress has provided by statute."). Petitioner alleges that Respondent violates his due process rights by continuing to detain him. (ECF No. 1 at PageID 6.) Respondent counters that because Petitioner complains that he is detained under the wrong statute, even if his detention is unlawful, it is not unconstitutional. (ECF No. 8 at PageID 30–31.) Or put another way,

11

Respondent asserts that § 1225 has already afforded Petitioner the due process that Congress chose to provide him.  (*Id*. (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).)

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.   And to evaluate the level of process owed to a noncitizen, the Sixth Circuit generally "applies the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976)."  *Godinez-Lopez*, 2025 WL 3047889, at *6 (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)).  *Matthews* considers (1) "the private interest that will be affected by the official action" (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

All three factors weigh in Petitioner's favor here.  He has a strong liberty interest in being free from physical detention.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The risk of erroneous deprivation is high here considering that Respondent and the BIA's current position is to afford him no bond hearing whatsoever.  And bond hearings are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties.  So the Court finds that the Government's interest in detaining Petitioner without that procedural safeguard does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation.  In fact, as it stands, Petitioner has no meaningful opportunity for an immigration judge to consider whether he is a danger to society or

a flight risk.  And the fact that Petitioner has been residing in the United States with no known criminal history further tips the scales in his favor.

This all makes clear that Petitioner is entitled to a bond hearing before an immigration judge.  And not only that, but his continued detention without that bond hearing violates his due process rights.  The Court therefore **GRANTS** the Petition.

## IV.      Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF No. 1 at PageID 7.)  Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b).  The Federal Rules require that claims for attorneys' fees and related expenses be made by motion.  Fed. R. Civ. P. 54(d)(2)(A).  So Petitioner must timely file a motion that complies with Local Rule 54.1(b) to seek attorneys' fees and costs.  *See* L.R. 54.1(b).

## CONCLUSION

For the reasons above, the Court **GRANTS** the Petition and **ORDERS** Respondent to release Petitioner.  *See Rodriguez v. Woosley*, No. 4:25-CV-168-RGJ, 2026 WL 36345, at \*11– 12 (W.D. Ky. Jan. 6, 2026) (collecting cases and finding immediate release as a remedy).  And the Court further **ENJOINS** Respondent from pursuing Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A).  If DHS later re-detains Petitioner under § 1226(a), it shall provide him with the bond hearing he is entitled to under that provision.

**SO ORDERED**, this 28th day of April, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

13